IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DON'T DISMYABILITIES, INC., and MONIQUE JANNETTE,<br>　　Plaintiffs,<br><br>v.<br><br>1800 GREENVILLE PARTNERS, LLC,<br>　　Defendant. | CIVIL ACTION NO. 3:18-CV-0386<br><br>DISABILITY ACCOMMODATIONS DISCRIMINATION COMPLAINT<br><br>ECF |

## COMPLAINT

### INTRODUCTION

1. This action arises under Title III of the Americans with Disabilities Act,[1] the Texas Architectural Barrier Act,[2] and the Texas Human Resources Code.[3] Monique Jannette is an individual with a mobility impairment disability. Don't Dismyabilities, Inc. ("DDMA") is an organization of individuals with disabilities who are mobility impaired. They bring this civil rights claim against 1800 Greenville Partners, LLC ("Greenville Partners") for owning and/or operating facilities that are not readily accessible to and usable by individuals with disabilities and for failing to comply with the TABA, thereby violating Plaintiffs' civil rights.

2. Plaintiffs seek a permanent injunction to enjoin Greenville Partners from engaging in these unlawful practices, seeks the removal of architectural barriers that discriminate against individuals with mobility impairment disabilities, and declaratory relief, along with damages for violations of civil rights, along with attorney's fees and the costs of litigation.

### JURISDICTION

3. This Court has jurisdiction over the federal claims brought in this action under 28 U.S.C. §1331, 42 U.S.C. §3613, and 42 U.S.C. §12188 and supplemental jurisdiction over the state claims

---

[1] 42 U.S.C. § 12101 et seq., (the "ADA").

[2] TEX. GOV'T CODE Ch. 469 (previously, Texas Revised Civil Statutes, Article 9102 et seq.) (the "TABA").

[3] TEX. HUM. RES. CODE § 121.001 et seq. (the "THRC").

under 28 U.S.C. §1367.

## BACKGROUND

4. The Americans with Disability Act Accessibility Guidelines (the "ADAAG" or the "Standards")[4] and the Texas Accessibility Standards (the "TAS")[5] have been the law for more than 25 years.

5. Congress passed the Americans with Disabilities Act after finding individuals with disabilities continually encounter "... the discriminatory effects of architectural ... barriers [and] ... failure to make modifications to existing facilities ...;"[6] It was signed into law on July 26,1990.

6. The ADAAG, requiring places of public accommodation to provide accessible parking and an accessible route into the public accommodation the parking serves, became effective January 26, 1992.

7. Texas passed the Texas Architectural Barrier Act "...to ensure that each building and facility subject to this chapter is accessible to and functional for persons with disabilities..."[7]

8. The Texas Accessibility Standards[8] adopted under the TABA apply to "a privately funded building or facility that is defined as a "public accommodation" by Section 301, Americans with Disabilities Act of 1990 (42 U.S.C. Section 12181), and its subsequent amendments, and that is constructed, renovated, or modified on or after January 1, 1992."[9]

## PARTIES

9. Plaintiff, Monique Jannette ("Ms. Jannette") is an individual with a disability within the

---

[4] 28 C.F.R. Part 36, Appendix A.

[5] 16 Tex. Amin. Code, § 68 (1994) Tex. Dept. Lic. & Reg. The TAS sections are exactly the same as the ADAAG sections cited herein and were copied verbatim from the ADAAG as applied to the architectural barriers described in this pleading.

[6] 42 U.S.C. §12101(a).

[7] Tex. Gov't Code §469.001(a).

[8] 16 Tex. Amin. Code, § 68 (1994) Tex. Dept. Lic. & Reg. (the "TAS"). The TAS sections are exactly the same as the ADAAG sections cited herein and were copied verbatim from the ADAAG as applied to the architectural barriers described in this pleading.

[9] Tex. Gov't Code, Sec. 469.003(a)(4).

*COMPLAINT*                                                                                               Page 2

meaning of Title III of the ADA and the TABA, and a "Person with a disability" as defined by THRC, in that she has a physical impairment that substantially limits one or more of her major life activities. She is "disabled" because of a spinal cord injury and uses a wheelchair for purposes of mobility.

10.     DDMA is a not for profit Texas corporation organized exclusively for charitable, religious, educational, and scientific purposes. The goal of DDMA is to protect the legal rights of persons with mobility impairment disabilities. DDMA's mission is to eradicate discrimination by government entities, places of public accommodation, commercial facilities, and in employment and living environments. It carries out programs and services to effectuate its mission, including encouraging architectural barrier removal, encouraging integrated living patterns, educating the public about accessibility and fair housing rights and requirements, educating and working with industry groups and public accommodations on accessibility compliance, and eliminating discriminatory practices.

11.     Each individual member of DDMA is a resident of the State of Texas and an individual with a disability within the meaning of the ADA 3(2), 42 U.S.C. 12102(2), in that each individual member has a physical impairment that substantially limits one or more of his/her major life activities, and requires the use of a wheelchair or other assistance device for purposes of mobility.

12.     Defendant Greenville Partners is listed by the Dallas Central Appraisal District as the owner of the real property located at 1808 Greenville Ave, Dallas, Texas (the "Property"). It is listed by the Texas Secretary of State as a Domestic limited liability company.

13.     Secretary of State records show Rudy Beuttenmuller as Greenville Partners's registered agent at 5335 Spring Valley Rd, Dallas, Texas 75254. He may be served with process at that address.

## FACTS

14.     The Property is an "other sales or rental establishment," known as Good Records, and a

public accommodations under Title III of the ADA as defined in 42 USC §12181(7)(E).[10]

15. Greenville Partners is a private entity within the meaning of the ADA.[11]

16. The Property is a "a privately funded building or facility that is defined as a 'public accommodation' by Section 301, Americans with Disabilities Act of 1990 (42 U.S.C. Section 12181), and its subsequent amendments."[12]

17. The Property is subject to the requirements of Title III of the ADA and the TABA.

18. The first certificates of occupancy for the Property were issued before January 26, 1993. Thus, the Property is defined as an "existing facility" under the ADA.[13]

19. Prior to instituting this suit, Ms. Jannette visited the Property and encountered a variety of architectural barriers, including inaccessible parking and no accessible route to and into, and throughout the facility.

20. Both the ADAAG and TAS require that where a public accommodation provides parking spaces for self-parking by employees or visitors, or both, it must also provides accessible parking for the disabled as defined in ADAAG/TAS §501 and §502. The Property provides parking spaces for self-parking by employees or visitors, or both.

21. The Property at one time had designated accessible parking marked by painting the universal accessibility symbol on the concrete in the parking spaces and correct signage on the wall in front of the space designating the space as accessible.

22. The Property has no designated accessible parking. That signage that was there has been removed, the painting on the concrete has been eroded.[14]

---

[10] 42 USC §12181(7)(E), "shopping center, or other sales or rental establishment;"

[11] 42 USC §12181(6).

[12] Tex. Gov't Code §469.003(a)(4).

[13] 28 CFR part 36.401.

[14] Painting the universal accessibility symbol on the concrete does not designate a parking space as accessible. It must be marked by correct signage in front of the space. *See* ADAAG/TAS §502.6 "Identification. Parking space identification signs shall include the International Symbol of Accessibility complying with 703.7.2.1. Signs identifying van parking spaces shall contain the designation "van accessible." Signs shall be 60 inches (1525 mm) minimum above the finish floor or ground surface measured to the bottom of the sign."

---

*COMPLAINT* Page 4

23. There is no accessible route into the Property.[15] Greenville Partners constructed a new front porch with a set of three steps to its only pubic entrance with no ramp.[16] The only way an individual in a wheelchair can access the Property is to go up the loading ramp, that is not configured as accessible, to the back door, and pound on the door until noticed by a store employee who can open the door from the inside for admission.

24. The Property, like all public accommodations, has been under the obligation to comply with the ADA and TABA since January 26, 1992. Since that time it has failed to remove barriers from the Property and provide correct accessible parking and accessible routes from the parking to its public accommodation's entrance.

25. Under the ADA discrimination includes a failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs when facility or part thereof that is altered by, on behalf of, or for the use of an establishment in a manner that affects or could affect the usability of the facility or part thereof.[17]

26. Since the ADA was passed, Greenville Partners has removed designated accessible parking and constructed inaccessible steps to its public accommodation entrance. It has failed to remove barriers where it would cost very little, but are a major impediment to individuals with disabilities like Ms. Jannette and DDMA's members who use a wheelchair for mobility and when it engaged in renovation, failed to comply with mandatory accessibility requirements under both the ADA and the TABA.

27. Prior to the filing of this suit, Ms. Jannette and Greenville Partners reached agreement to resolve Defendant's failure to provide reasonable accommodation by Greenville Partners agreeing

---

[15]*See* ADAAG/TAS §402.2. "Components. Accessible routes shall consist of one or more of the following components: walking surfaces with a running slope not steeper than 1:20, doorways, ramps, curb ramps excluding the flared sides, elevators, and platform lifts." An accessible routhe never includes stairs.

[16]"[A]n alteration that affects or could affect the usability of <u>or access to an area containing a primary function</u> shall be made so as to ensure that, to the maximum extent feasible, the path of travel to the altered area, including the parking areas, rest rooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities..." ADAAG/TAS §202.4.

[17]42 USC §12183(a)(2); 28 CFR 36.403(a).

---

to modify the Property to provide accessible parking spaces and create an accessible route to the public accommodation entrance on or before July 1, 2016.

28. Because Greenville Partners failed to comply with the agreement to remove the barriers and provide parking and an accessible route into the Property, Ms. Jannette complained to DDMA that nothing had been done to the Property and that it was inaccessible to and usable by individuals with disabilities.

34. Ms. Julie Maloukis, a director of DDMA and an individual with a disability who uses a wheelchair, called Fred Cawyer, a registered accessibility specialist to have him inspect the Property. Mr Cawyer found that the facts stated by Ms. Jannette were correct, that there was no accessible parking and no accessible route in the Property. DDMA referred this case to the undersigned attorney.

29. Under the law, both the landlord who owns the real property and the tenant who owns or operates the public accommodation are jointly and severally liable for ADA violations. As between those parties, allocation of responsibility for complying with ADA barrier removal may be determined by lease or other contract.[18] However, as the owner, Greenville Partners is a necessary party to any lawsuit seeking ADA remediation at its Property.

## *INJURY TO PLAINTIFFS*

30. As a result of Greenville Partners' actions described above, Plaintiffs have been directly and substantially injured. DDMA has been frustrated in its mission to eradicate discrimination in public accommodations and in carrying out the programs and services they provide, including encouraging integrated living patterns, educating the public about accessibility requirements, educating and working with public accommodations and industry groups on accessibility compliance. DDMA has also been damaged by having to divert scarce resources that could have been used to provide these services to instead identify and counteract Greenville Partners' discriminatory conduct.

31. In addition, Greenville Partners failure to comply with its agreement to remove the barriers

---

[18]*See* 36 C.F.R. 201 (b).

*COMPLAINT* Page 6

preventing access to the Property frustrated the mission of DDMA inasmuch as they served to discourage people with disabilities from using its tenants public accommodation. Greenville Partners' conduct reduced the effectiveness of Plaintiffs' outreach efforts and caused Plaintiffs to provide additional educational programs to rebut the impression that constructing inaccessible facilities is permissible.

32. Greenville Partners' continuing discriminatory practices have forced DDMA to divert significant and scarce resources to identify, investigate and counteract the Defendant's discriminatory practices, and such practices have frustrated Plaintiffs' other efforts against discrimination, causing it to suffer concrete and demonstrable injuries.

33. DDMA conducted a site visit at the Property, resulting in the diversion of their resources in terms of staff time, salaries and travel and incidental expenses that it would not have had to expend were it not for Greenville Partners' violations. In doing the acts or in omitting to act as alleged in this Complaint, each employee or officer of each Greenville Partners was acting in the course and scope of his or her actual or apparent authority pursuant to such or the alleged acts or omissions of each employee or officer as agent was subsequently ratified and adopted by Greenville Partners.

34. Until remedied, Greenville Partners' unlawful, discriminatory actions will continue to injure Plaintiffs by *inter alia*:

   a. interfering with efforts and programs intended to bring about equality of opportunity in accessing public accommodations;

   b. requiring the commitment of scarce resources, including substantial staff time and funding, to investigate and counteract Greenville Partners' discriminatory conduct, thus diverting those resources from the Plaintiffs' other activities and services, such as education, outreach, and counseling; and

   c. frustrating Plaintiffs' missions and purposes of promoting accessible public accommodations to all persons without regard to any protected category, including disability.

35. Greenville Partners' discriminatory conduct will also deprive DDMA's members and individuals with disabilities to whom DDMA provides services and others living in and near the Property of the benefit of living in a diverse community that includes people who have disabilities and use wheelchairs.

36. Despite the architectural barriers Ms. Jannette encountered, she has used the property since the agreement was signed and continues to use the facility despite the barriers she has encountered.

## CAUSES OF ACTION
## Count 1
## ADA Title III Failure to Remove Where Readily Achievable

37. Places of public accommodations have been required to remove architectural barriers from existing facilities and provide accessible parking and an accessible route into the facility since 1993 if that removal is readily achievable.[19] The cost to provide correct parking is de minimis, but Greenville Partners has failed to do so.

38. Greenville Partners discriminate against Monique Jannette and DDMA's members on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations at the Property in that, they own and operate a public accommodation that does not afford the members of DDMA the full and equal use and or enjoyment of or access to the goods, services, facilities, privileges, advantages, and accommodations available to its able bodied patrons as required by law because it has failed to remove those barriers where the removal was readily achievable.

39. As a direct and proximate result of Defendant's denial of appropriate and dignified access into and use of the Property, it has deprived Plaintiffs of their civil liberties and thereby discriminated against them.

## Count 2
## ADA Title III Failure to Make Useable Alterations

40. Since 1992 the ADA has required that when a facility or part thereof that is altered by, on

---

[19] 42 USC 12182(b)(2)(A)(iv); 28 CFR Part 36.304(b).

*COMPLAINT* Page 8

behalf of, or for the use of a public accommodation in a manner that affects or could affect the usability of the facility or part thereof, alterations must be made in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, including the parking and path of travel into and throughout the facility.[20]

41. Greenville Partners's failure to provide accessible parking and building a new entrance with no accessible path of travel into and throughout the facility when they engaged in new construction is a failure to make the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs is discrimination and denied DDMA's members appropriate and dignified access into and use of the Property and has deprived Plaintiffs of their civil liberties and thereby discriminated against them.[21]

## Count 3
## Tex. Hum. Res. Code - Discrimination

42. TEX. HUM. RES. CODE § 121.003(a) provides that persons with a disability have the same right as the able-bodied to the full use and enjoyment of any public facility in the state.

43. TEX. HUM. RES. CODE § 121.003(d)(1) specifically provides that failure to comply with the provisions of the TABA is discrimination.

44. TEX. HUM. RES. CODE §121.004(b) provides that any person with a disability deprived of his or her civil liberties may maintain a cause of action for damages in a court of competent jurisdiction, and there is a conclusive presumption of damages in the amount of at least $300.00 to the person with a disability.

45. Greenville Partners violated the TABA[22] by engaging in renovations at the Property and failing to design and construct buildings and facilities on or after January 1, 1993 to the extent required by the Texas Accessibility Standards issued by the Texas Department of Licensing and

---

[20] 42 USC §12183(a)(2).
[21] *Id.*
[22] Tex. Civ. Stat. Art. 9102 Sec. 2(a)(4).

Regulation.[23]

46. As a direct and proximate result of Greenville Partners's violations of the TABA as set forth above, Ms. Jannette and DDMA's members have been denied appropriate and dignified access into and use of the Property and Defendants have violated their civil rights.

## *REQUEST FOR RELIEF*

DDMA and Ms. Jannette respectfully pray that the Court enter an order granting the following relief.

47. An order directing Greenville Parners to remove the architectural barriers barring DDMA's members and Ms. Janette from the full and equal access to the facilities of the Property enjoyed by those patrons who do not have a mobility impairment and for Defendant to provide correct accessible parking and an accessible route to the public accommodation entrance on the Property, and to make the Property accessible to and usable by individuals with disabilities, consistent with the ADA Accessibility Guidelines for Buildings and Facilities and the Texas Accessibility Standards;

48. An entry of money judgment against Greenville Partners awarding Monique Jannette and DDMA damages for their injuries and the violation of DDMA's members and Ms. Jannette's civil liberties and such further amount as may be shown by the evidence at trial.

49. An award to DDMA and Ms. Jannette of all attorney's fees, including litigation expenses and all costs; and;

50. An award to DDMA and Ms. Jannette for all other relief at law and in equity for which the Court deems appropriate.

Dated:

                                          Respectfully submitted,

_____

---

[23] TEX. GOV'T CODE §469.052.

    _s/Kenneth Carden_
**KENNETH D. CARDEN**
Bar Card No. 03787300
Carden Law PLLC
1409 South Lamar # 601
Dallas, Texas 75215
Tel. 214.85.3535
Fax 214.485.3536
Carden@ADA-Law.com
**FRANCIS KEY**
Bar Card No. 24097255
3132 Colgate
Tyler, TX, 75701
Tel. 903.749.3651
Fax 903.598.7950
francisjkey@gmail.com

**Attorneys for Ms. Jannette and Don't Dismyabilities, Inc.**